Argued November 7, 1962, reversed March 29, 1963

In the Matter of Kathleen Elaine Logsdon
In the Matter of Howard Eugene Logsdon
LOGSDON et ux v. STATE OF OREGON and
DELL et al
380 P. 2d 111

*Karl T. Huston,* Corvallis, argued the cause for appellants. On the briefs were Huston, Thomas & Johnson, Corvallis.

*A. R. McMullen,* District Attorney, Newport, and *Eugene K. Richardson,* Newport, argued the cause and submitted a brief for respondents.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and DENECKE, Justices.

McALLISTER, C. J.

This is a contest over the custody of two children, Howard Logsdon and his sister, Kathleen, whose parents were both killed in an airplane crash. The paternal grandparents appeal from a decree of the circuit court for Lincoln county awarding custody to a maternal aunt.

The Logsdons resided at Newport in Lincoln county, and both parents were killed on June 25, 1961. The boy, Howard, was then seven years old, and his sister, Kathleen, six years old. The paternal grandparents, Elza and Florence Logsdon, who resided in Iowa, came to Newport immediately after the death of their son and daughter-in-law. The record discloses that on June 29, 1961 the grandparents had physical custody of the children at the home of one Harold Mosier in Newport.

On June 29, 1961, Dorothy C. Majors, the Director of the Juvenile Department for Lincoln county filed in the county court of that county a petition alleging that Howard Logsdon was—

"* * * a child within the jurisdiction of the Juvenile Court by reason of both parents having

met accidental death and by reason of the child having need of the care, guidance and protection necessary for his physical, mental or emotional well-being; and that Waneta Ellen Logsdon, mother of said child is deceased and that Jerry Eldon Logsdon, father of said child is deceased, and that Mr. and Mrs. Elvy Logsdon, grandparents of said child, have physical custody of said child, in the home of Harold Mosier, 1920 N. Coast Highway, Newport, Oregon."

A like petition was filed as to Kathleen Logsdon.

On the same day the county judge, pursuant to ORS 419.482 (3) entered orders placing the children in the temporary custody of the juvenile court, and caused notice to be given to the interested relatives of a hearing to be held the following day.

On the following day, June 30, 1961, the county court held a hearing and on July 3, 1961 entered an order making both children wards of the court, placing them in the temporary custody of a maternal aunt, Mrs. Chester Coxen, and her husband, and continuing the hearing of the matter until further order of the court.

Notice was given of a further hearing to be held on August 15, 1961, but the record indicates that the hearing was not held. On August 21, 1961 an order was entered continuing the hearing until further order of the court. This order seems to have been the last action taken by the county court.

On September 8, 1961 the grandparents filed a notice of appeal from the county court to the circuit court for Lincoln county, appealing from—

"* * * that certain oral order made by Mike Miller, Judge of said juvenile court, on August 15, 1961 continuing the custody of said Kathleen Elaine

Logsdon in Mr. and Mrs. Chester Coxen of Route 1, Box 251, Toledo, Oregon, and from the written order made by said Mike Miller, Judge of the juvenile court, on August 21, 1961 continuing the hearing on the petition filed in the above proceeding."

A like notice of appeal was filed in the Howard Logsdon case.

On January 29, 1962 the matters came on for hearing in the circuit court for Lincoln county. At that time the parties stipulated concerning the jurisdiction of the court as follows:

"MR. HUSTON: It is stipulated and agreed that any objections as to the manner of appeal will be waived and that we will admit the jurisdiction of the Circuit Court of the State of Oregon for the County of Lincoln, sitting as a juvenile court, to hear and determine the matter of the custody of Kathleen Elaine Logsdon and Howard Eugene Logsdon, and that Mr. Richardson may put on evidence and cross examine as a representative of the Dells and the Coxens intervening herein. Does that do it?

"MR. McMULLEN: I have just one question, Mr. Huston, you said 'The Circuit Court sitting as a juvenile court'; it's sitting as an appellant court, it's tried de novo by reason of the appeal.

"MR. HUSTON: I have no objections. Sitting as an appellant court and also as a juvenile court, because it's tried de novo anyway.

"MR. RICHARDSON: If this means that the Court at this time is taking jurisdiction sitting in place of the juvenile court; which I thought is what you said—

"MR. HUSTON: That's correct.

"MR. RICHARDSON: Then I so stipulate on behalf of Robert M. Dell and Theresa Dell and Juanita and Chester Coxen.

"MR. HUSTON: That's correct, sitting in the place of the juvenile court.

"MR. McMULLEN: So stipulated by the State."

It was further stipulated that the two cases should be consolidated for trial.

On February 13, 1962 the circuit court entered a decree awarding custody of both children to Theresa E. Dell, a maternal aunt of the children, and Robert M. Dell, her husband. From that decree the grandparents appeal.

■ Reluctantly we have reached the conclusion that this case must be reversed on procedural grounds. At the outset it clearly appears that the appeal from the county court to the circuit court was taken from a non-appealable order. Appeals from the juvenile court to the circuit court are authorized by ORS 419.561 (1),[1] which allows an appeal only from "a final order of the juvenile court." Before the enactment of ORS 419.561[2] an appeal could be taken "from any permanent or temporary order of the juvenile court to the circuit court." Ch 414 Oregon Laws 1957. A comparison of the two statutes demonstrates a clear legislative intent to permit an appeal in these cases only from a final order of the juvenile court. The right to appeal is statutory and subject to any limitations imposed by the statute conferring the right. *McEwen v. McEwen,* 203 Or 460, 469, 280 P2d 402 (1955); *Inland Nav. Co. v. Chambers,* 202 Or 339, 350, 274 P2d 104 (1954); *Chebot v. State Industrial Acc. Com.,* 106 Or 660, 669, 212 P 792 (1923).

[1] "ORS 419.561 (1) Any person whose right or duties are adversely affected by a final order of the juvenile court may appeal therefrom. An appeal from a circuit court shall be taken to the Supreme Court, and an appeal from a county court shall be taken to the circuit court."

[2] § 43 ch 432 Oregon Laws 1959.

■ The notice of appeal from the county court in this case first refers to an oral order made by the court continuing the custody of Kathleen in Mr. and Mrs. Chester Coxen. This obviously was not an appealable order, not only because it was oral, but also because, according to the notice of appeal, it purported only to continue the temporary custody of the children as previously ordered on July 3, 1961.

The notice of appeal next refers to an order entered on August 21, 1961 continuing the hearing. That order, of course, had no semblance of finality and was certainly not appealable. So far as we can ascertain from the record no final order was ever entered by the county court.

It is not necessary to decide whether an appeal could have been taken from the order of July 3, 1961 declaring the children wards of the juvenile court, since the notice of appeal was filed more "than 30 days after the entry of the court's order." ORS 419.561 (3).

■ The parties apparently entertained doubts concerning the jurisdiction of the circuit court and attempted to circumvent the lack of jurisdiction by stipulation. Jurisdiction of the subject matter cannot be conferred by stipulation. *Fox v. Lasley,* 212 Or 80, 90, 318 P2d 933 (1957); *Parmele v. Mathews,* 233 Or 616, 379 P2d 868 (March 20, 1963).

In addition to lack of jurisdiction because the cause was not allowed to proceed in the county court to a final order, we also find lack of jurisdiction for a more basic reason. Passing over the sufficiency of the petition filed in the county court, we find no evidence whatever tending to establish that the Logsdon children were children within the jurisdiction of the juvenile court as provided in ORS 419.476 (1).

■ From the evidence in this case it is clear that when the petition was filed in the county court these children were in the actual physical custody of their grandparents and were receiving the best of care. Instead of being abandoned these children had numerous relatives, all apparently anxious to provide them "with the care, guidance and protection necessary" for their "physical, mental or emotional well-being." It was not a question of whether the children would be adequately provided for, but only a question of who should have that privilege. The record discloses no circumstances justifying the intervention of the juvenile court. In *Sneed v. Sneed,* 230 Or 13, 16, 368 P2d 334, we said:

"* * * The statute, as amended in 1959, which provides the only means by which the juvenile court can obtain jurisdiction is ORS 419.476 (1). It reads:

· " 'The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

" '(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city; or

" '(b) Who is beyond the control of his parents or other person having his custody; or

" '(c) Whose behavior or condition is such as to endanger his own welfare or the welfare of others; or

" '(d) Whose parents or other person having his custody have abandoned him, failed to provide him with the support or education required by law, subjected him to cruelty or depravity or failed to provide him with the care, guidance and protection necessary for his physical, mental or emotional well-being; or

" '(e) Who has run away from his home.'

"This court held in *Belmont v. Black,* 1959, 218 Or 514, 346 P2d 367, and again in *Cutts v. Cutts,* supra, [229 Or 33, 42, 366 P2d 179] that the court cannot assume jurisdiction of a child, pursuant to the above statute, unless the person having the physical custody of the child, even though a stranger to the child, has neglected the child. * * *"

In this case we find neither allegation nor proof of neglect or other facts to authorize either the juvenile court or the circuit court to declare these children wards of the juvenile court.

If legal action was necessary, this would seem to be an appropriate case for the appointment of a guardian. ORS 126.006 et seq.

The decree of the circuit court is reversed. Costs shall not be allowed in this court.

DENECKE, J., specially concurring.

This case might appear similar to that of *Parmele v. Mathews,* 233 Or 616, 379 P2d 868, in which I joined in the dissenting opinion. However, I here concur with the majority in the belief that this case is not similar to *Parmele v. Mathews.* Under the pleadings and issues here involved the circuit court could not act as a probate court to appoint a guardian or as an equity court to award custody in a habeas corpus proceeding. There were no pleadings creating the issues involved either in the appointment of a guardian or the awarding of custody in a habeas corpus proceeding. The only operable pleading was the petition by the County Juvenile Officer alleging that the children were within the jurisdiction of the juvenile court and asking the juvenile court to inquire into the matter.